[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14565
Non-Argument Calendar
_____

Agency No. A089-362-139


MARIA ISABEL ALVARADO HUERTA,

Petitioner,


versus


U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 9, 2018)

Before WILLIAM PRYOR, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Maria Isabel Alvarado Huerta petitions for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") denial of her cancellation of removal application as a matter of discretion. We dismiss the petition for lack of jurisdiction.

## I. BACKGROUND

Huerta, a citizen of Mexico, was born in 1985, has never been married, and has four minor children.[1] Huerta first entered the United States in March 1989 without being admitted or paroled after inspection by an immigration officer. In March 2003, Huerta attempted to re-enter the United States at a Texas port-of-entry and falsely claimed to be a U.S. citizen. In August 2003, Huerta again attempted to re-enter the United States at the same Texas port-of-entry. According to a Form I-213, Huerta was driving a car and told a border patrol officer that she was a U.S. citizen; Huerta was instructed to proceed to a secondary inspection point but she instead drove through the checkpoint without being inspected.

Huerta has been arrested four times while in the United States. She was first arrested in 2001 for shoplifting from Macy's; the department store declined to press charges. Huerta was arrested a second time in 2002 for trespassing; the charges once again were dropped. Huerta was arrested a third time in 2007 for driving under the influence ("DUI"). At the immigration hearing, Huerta testified

---

[1] At the time of the hearing in February 2015, Huerta had three children and was pregnant with her fourth child. Her eldest son had been diagnosed with dyslexia and autism.

2

that her brother was driving the car as they left a club but she switched seats with him when they were pulled over so that he would not get in trouble for underage drinking. Her younger sister, who was 13 years old at the time, was in the back seat of the car. According the state-court judgment, Huerta was sentenced to six months of imprisonment; however, the state court suspended Huerta's sentence and placed her on six months of community supervision.[2] She was arrested for a fourth time in 2012 for domestic violence involving her partner at the time, Raphael Delgado. During an argument, Delgado hit Huerta and then she struck him with a skateboard five times. The charges were dropped when both parties refused to press charges.

In December 2012, Huerta was issued a notice to appear ("NTA") by the Department of Homeland Security. The NTA alleged that Huerta: (1) was not a U.S. citizen or national (allegation 1); (2) was a native and citizen of Mexico (allegation 2); (3) had arrived in the United States at an unknown date (allegation 3); (4) was never admitted or paroled after inspection by an immigration officer (allegation 4); and (5) was an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document (allegation 5). The NTA charged that Huerta was subject to removal because she was an alien that had entered the United States without being admitted or paroled,

---

[2] In addition, she was fined $500 plus court costs.

3

in violation of the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (charge 1), and was an applicant for admission not in possession of a valid entry document, in violation of INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I) (charge 2).

In March 2013, Huerta submitted an application for cancellation of removal, stating that if she were deported, her parents, who are legal permanent U.S. residents, and her children would experience extremely unusual hardship. Huerta indicated that she was single and had only left the United States to visit Mexico on two occasions in March and August 2003.

At a master calendar hearing, Huerta admitted allegations 1 and 2 and denied allegations 3, 4, and 5, explaining that she had entered the United States in March 1989 with a valid border crossing card. Huerta conceded charge 2 and denied charge 1, again stating that she had a valid border crossing card at the time of entry; she did not, however, present any evidence to support this claim. The government made an oral motion to pretermit her cancellation of removal application because it had evidence that when Huerta entered the United States in August 2003 she had falsely represented that she was a U.S. citizen and fled from an inspection point.

After hearing testimony, the IJ issued an oral decision denying Huerta's application for cancellation of removal. The IJ found that Huerta met the

4

continuous-physical-presence requirement of 10 years, had not been convicted of or committed any statutory bars to the relief requested, and had established that her dyslexic and autistic son would experience hardship if she were deported, which the government did not dispute. However, the IJ found that Huerta had failed to establish good moral character under the catchall provision of 8 U.S.C. § 1101(f) based on her multiple false citizenship claims made at the Texas port-of-entry in 2003, her 2007 DUI conviction with a minor in the vehicle, and the 2012 incident where Huerta had a physical altercation with her partner. The IJ also denied Huerta's application as a matter of discretion, concluding that she had not shown that she was "fully integrated, immersed or acculturated to this society" for the same reasons noted in the good-moral-character analysis.

Huerta appealed the IJ's decision, arguing that the IJ had erred in finding that she lacked good moral character under the catchall provision and in determining that she should be denied relief as a matter of discretion because, contrary to the IJ's findings, she had given reasonable explanations for her conduct underlying her arrests. The BIA dismissed Huerta's appeal, affirming the IJ's decision to deny Huerta's cancellation of removal application as a matter of discretion. The BIA concluded that the IJ correctly found that Huerta: (1) falsely claimed to be a U.S. Citizen at a Texas port-of-entry and evaded secondary inspection in August 2003; (2) had a DUI conviction when she was driving with

5

her younger siblings in the car and was sentenced to six months of imprisonment and 6 months of supervision, all while she had a three-month-old child at home; and (3) "was involved in a second alcohol-related incident in 2012" when she and Delgado had a domestic dispute, which led to her arrest. The BIA stated that, "[b]ased on these properly found facts, notwithstanding the respondent's equities, we affirm the Immigration Judge's decision that the respondent does not warrant cancellation of removal as a matter of discretion." The BIA found the IJ's determinations to be dispositive and declined to address whether the IJ had erred in alternatively denying her application based on a finding that she lacked good moral character.

## II. DISCUSSION

On petition for review, Huerta argues that the BIA based its discretionary decision to deny her relief on facts that were not supported by the record.

We review our subject matter jurisdiction de novo. *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003). We review the decision of the BIA as well as the decision of the IJ to the extent that the BIA expressly adopted the IJ's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947-48 (11th Cir. 2010). The Attorney General has discretion to cancel the removal and adjust the status of a deportable non-permanent resident if that alien has: (A) a continuous physical presence of not less than 10 years; (B) good moral character during that

period; (C) a lack of certain criminal convictions; and (D) establishes that removal would cause exceptional and extremely unusual hardship to a qualifying relative. INA § 240A(b), 8 U.S.C. § 1229b(b); *Gonzalez-Oropeza*, 321 F.3d at 1332. There are several classes of persons who are deemed not to be of good moral character. *See* INA § 101(f), 8 U.S.C. § 1101(f). But the fact that a person does not fall within one of these classes does not preclude a finding that the person is not of good moral character for other reasons. *Id.* This provision is referred to as the "catchall provision." *Jimenez-Galicia v. U.S. Att'y Gen.*, 690 F.3d 1207, 1210 (11th Cir. 2012).

We lack jurisdiction to review the BIA's discretionary decision to grant or deny discretionary applications for cancellation of removal. *See* INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii); *Gonzalez-Oropeza*, 321 F.3d at 1332-33. The BIA's determination that a person lacks good moral character under the catchall provision is discretionary. *Jimenez-Galicia*, 690 F.3d at 1210. We do, however, retain jurisdiction to review questions of law and substantial constitutional claims regarding discretionary determinations. *See* INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D); *Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1195-96 (11th Cir. 2008) (noting that constitutional claims must be "non-frivolous"). "A question of law involves the application of an undisputed fact pattern to a legal standard. . . . A discretionary decision, on the other hand,

7

requires an adjudicator to make a judgment call." *Bedoya-Melendez v. U.S. Att'y Gen.*, 680 F.3d 1321, 1324 (11th Cir. 2012) (quotation omitted).

In *Jimenez-Galicia*, we dismissed a petition for review where the petitioner only challenged the BIA's determination that he lacked good moral character because "no genuine question of law" was implicated.  690 F.3d at 1208.  We determined that we lacked jurisdiction "to consider garden-variety abuse of discretion arguments about how the BIA weighed the facts in the record."  *Id.* at 1210-11 (quotation omitted).  We thus rejected the petitioner's challenge to the BIA's factual determinations in explaining that "what Petitioner labels as legal arguments are, in fact and at most, quarrels with the BIA's exercise of discretion— quarrels about weighing and balancing the imponderables that bear on a decision about 'good character' and, therefore, quarrels into which we may not be drawn properly."  *Id.* at 1211.

Here, the BIA only affirmed the IJ's determination that Huerta should be denied cancellation of removal as a matter of discretion, even though the IJ relied on some of the same facts to support his good-moral-character determinations.  We lack jurisdiction to review the discretionary decision to deny Huerta's application for cancellation of removal.  *See* INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii); *Gonzalez-Oropeza*, 321 F.3d at 1332-33.  Additionally, we lack jurisdiction to review Huerta's purported "legal" challenges because they are, in

8

essence, challenges to how the BIA weighed the evidence in the record. *See*

*Jimenez-Galicia*, 690 F.3d at 1210-11.

Huerta's challenges to the BIA's factual determinations are not "questions of

law." *Id.* at 1210. Although the BIA and IJ determined that Huerta's 2012

domestic-violence dispute involved alcohol and there does not appear to be any

clear indication in the record that it did, the IJ stated that her arrest, not her alleged

alcohol consumption, was the negative discretionary factor that it considered.

Similarly, although Huerta appears to be correct that her six-month sentence for

her 2007 DUI conviction was suspended, her challenge to how the BIA and IJ

weighed this evidence is improper. *Id.* at 1211. Nonetheless, Huerta's challenges

to the BIA and IJ's conclusions drawn from the record are not reviewable because

they are not questions of law. *See Bedoya-Melendez*, 680 F.3d at 1324.

Huerta's remaining factual challenges—specifically that she was not driving

when she received a DUI, did not lie about being a U.S. citizen in August 2003,

and was not operating the car as she crossed the border in August 2003—are all

contradicted by other evidence in the record. The state-court judgment from

Huerta's 2007 DUI conviction stated that she was driving the car when she was

pulled over and the Form I-213 from Huerta's August 2003 border crossing stated

that she was driving the car, told a border patrol officer that she was a U.S. citizen,

was alone, and proceeded to drive through a secondary point without being

9

inspected.  Thus, even if the BIA and IJ made some incorrect factual determinations, Huerta's "legal" challenges to her removal proceedings are factual and "garden-variety abuse of discretion arguments about how the BIA weighed the facts in the record."  *Jimenez-Galicia*, 690 F.3d at 1210-11 (quotation omitted).

Because Huerta seeks to challenge the BIA's discretionary determinations by raising factual arguments, we dismiss her petition for lack jurisdiction.  *Id.*; *Bedoya-Melendez*, 680 F.3d at 1324.

**PETITION DISMISSED.**